JACK L. STROOP and ALVINA J. STROOP, Plaintiffs and Appellants, v. NEIL R. CARBERRY and MARGARET E. CARBERRY, Defendants and Respondents.

No. 10120

Submitted January 9, 1961. Decided February 8, 1961.

359 P.2d 504

Loble, Picotte & Hooks, Patrick F. Hooks, Helena, for appellants. Patrick F. Hooks argued orally.

Orin R. Cure, Great Falls, argued orally, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered in favor of the defendants. The action was brought by the plaintiffs for the amount of $901.02 which was an alleged unpaid balance owed by the defendants to the plaintiffs as a result of the sale of a 1952 Packard automobile. Pursuant to stipulation of counsel, the case was tried by the district court without a jury, and the court found for the defendants.

The plaintiffs, Jack L. and Alvina J. Stroop, were husband

and wife and resided in the city of Great Falls, Montana. The defendants, Neil R. and Margaret E. Carberry, were husband and wife and lived next door to the Stroops at the time of the sale of the 1952 Packard automobile.

The complaint alleged that in May of 1954, the plaintiffs sold and delivered a 1952 Packard automobile and three extra automobile tires to the defendants. It alleged that the defendants promised to pay the sum of $1,820 for the automobile and the tires, but that only the amount of $918.98 had been paid leaving a balance due from the defendants of $901.02 which had not been paid on demand. The complaint then prayed for judgment in the amount of $901.02 against the defendants.

The defendants demurred to the complaint and the demurrer was overruled. They then answered as follows: They admitted that they had paid the plaintiffs the sum of $918.98 for the 1952 Packard automobile; alleged that the sum of $918.98 was the full amount of the agreed purchase price for the automobile; and denied the remainder of the allegations of the complaint.

After the evidence was submitted, the district court entered findings of fact and conclusions of law wherein it found that the defendants had paid the amount of $918.98 to the plaintiffs for the automobile which was the full amount agreed upon for the sale. The court concluded that the plaintiffs should take nothing from the action and rendered judgment for the defendants. The plaintiffs have appealed from this judgment.

The sole issue raised by the plaintiffs' four specifications of error is whether the evidence justified the district court's judgment. In a determination of this question it will be necessary to consider the evidence which was before the district court concerning the amount that the defendants agreed to pay for the Packard.

The following testimony was received in the presentation of the plaintiffs' case:

The plaintiff, Jack L. Stroop, testified that his occupation was selling new and used automobiles. In May of 1954, he had been engaged steadily in that occupation for four or five months with some experience prior to that time. He was employed by Seese Chevrolet until May 1, 1954, when the company changed hands and after that date he was employed by the new owner, the City Motor Co. At the time that the company changed hands he testified that he thought it would be a good idea if he would own a new car demonstrator of the type that he sold so he decided to sell his Packard and buy a new Chevrolet demonstrator. He testified that he was not required to sell the Packard but just thought it would be a good idea. Mr. Stroop testified that the Carberrys agreed to pay a total amount of $1,820 for the Packard as follows: by paying the Stroops the amount of the down-payment they would have to make on a new Chevrolet demonstrator; by paying the remainder of the payments which the Stroops still owed to the First National Bank of Great Falls on the Packard; and by paying an amount, at a later time, without interest, so all of the amounts would total $1,820. Mr. Stroop claimed that the agreement was reached through a series of meetings and conversations between the Stroops and the Carberrys. His testimony concerning these meetings was, in essence, as follows:

(1) The first time that the sale was discussed was in early May of 1954 when Mr. Carberry came to ask Mr. Stroop about the book value of a Chrysler automobile which Mr. Carberry was interested in buying. At that time Mr. Stroop told Mr. Carberry that he was trying to sell the Packard. Mr. Carberry asked Mr. Stroop what he wanted for the Packard, and Mr. Stroop told him he wanted the "book value" of $1,820.

(2) Four or five days later Mr. Stroop had a conversation with Mr. Carberry near the Carberry property, on the county road, and the value and method of payment were discussed.

(3) Two or three days after this conversation, Mrs. Carberry came to the Stroop home around noon and told the

Stroops that they, the Carberrys, were going to buy the Packard.

(4) The next evening, Mr. Stroop went over to the Carberry home alone and mentioned an amount of $275 that would be required as a down-payment on the new Chevrolet demonstrator. At that time, the Carberrys said that a $275 down-payment would be fine.

((5) The next evening the Stroops went to the Carberry residence and talked with Mrs. Carberry. They told her that only $225 was required as a down-payment on the new Chevrolet demonstrator and, at that time, Mrs. Carberry gave them a check for that amount.

(6) Two days later, Mr. Stroop delivered the Packard to Mrs. Carberry.

(7) The next day, Mr. Carberry went with Mr. Stroop to the First National Bank and paid off the bank balance of $693.98 which the Stroops owed on the Packard.

(8) Three or four days later at the Stroop residence the Stroops signed over the title of the Packard to the Carberrys. At that time, Mr. Stroop told Mr. Carberry that he would not file a lien on the Packard for the unpaid balance, since he did not want to put the Carberrys to the trouble and expense involved.

(9) The next discussion was three months later, in September of 1954, when the Stroops asked the Carberrys when they would begin making payments on the unpaid balance.

To support his allegation that the Carberrys agreed to pay a total amount of $1,820 and not $918.98 for the Packard, Mr. Stroop testified that while he was working in April he left the Packard on the used car lot of his employer and that it was priced at $2,195 at that time. As a rebuttal witness, Mr. Stroop testified that about twenty days prior to May 15, 1954, he had an offer of $1,300 cash and a 1947 Hudson worth $400 for the Packard but he did not accept it. He did not identify the person making this offer or call him as a witness.

The plaintiff, Alvina J. Stroop, substantially verified the testimony of her husband. She also testified that in September of 1954, when she went to the Carberry residence to ask them when they would start making payments on the balance owed, the Carberrys were very surprised.

Arnold M. Wirtz testified that in the Spring of 1954 he was at the Stroop residence and that Mr. Stroop offered to sell him the Packard at that time. He testified that the method and amount of payment discussed was that Wirtz would take over the payments that the Stroops owed the bank on the Packard and pay an amount later, at no interest, which would make the total purchase price the top "book value" of $1,800, or $1,850. However, he testified that he did not need an automobile at that time so he did not accept the offer.

The following testimony was offered into evidence by the defendants:

The defendant, Neil R. Carberry, testified that there was no discussion about the sale of the Packard at the time he discussed the "book value" of a Chrysler with Mr. Stroop. He testified that the first conversation concerning the sale of the Packard was on the county road near the Carberry property and, at that time, Mr. Stroop told him that he was asking an amount equal to the down-payment required on a new Chevrolet demonstrator plus the balance of payments which the Stroops owed the First National Bank on the Packard. Mr. Stroop told Mr. Carberry he was making the sale since he needed the new demonstrator in his business. Mr. Carberry testified that in a later conversation Mr. Stroop mentioned that the down-payment he would need on a new Chevrolet demonstrator would be about $175 plus approximately $675 which was owed the bank on the Packard. Mr. Carberry testified that he was under the impression that Mr. Stroop's job was in jeopardy if he did not get rid of the Packard and buy a new Chevrolet demonstrator. He also testified that he at no time agreed to pay the total amount of $1,820 for the Pack-

ard. Mr. Carberry denied that Mr. Stroop ever said anything about saving the Carberrys' trouble and expense by not filing a lien on the Packard. He also testified that when he bought the Packard there was some trouble with the windshield wipers and the steering mechanism and several months later the engine needed overhauling.

The testimony of the defendant, Margaret E. Carberry, supported that of her husband. She testified that Mr. Stroop told the Carberrys that he would sell the Packard for an amount equal to the Stroops' down-payment on a new Chevrolet demonstrator plus the balance that the Stroops owed the bank on the Packard. She testified that the Carberrys did not particularly need another automobile at that time but that one of Mr. Stroop's talking points was the price he was asking for the Packard. She testified that the Stroops told the Carberrys that they would need approximately $175 as a down-payment on the new Chevrolet demonstrator. However, when the Stroops later told her that the down-payment was $225 she paid that amount since she thought the total price of the Packard was still reasonable. She testified that there was never a conversation concerning any amount in addition to the down-payment on the new Chevrolet demonstrator plus the balance owed to the bank on the Packard.

As can be determined from the record, there is a sharp conflict in the evidence which each side has presented in this case. The Stroops testified that the Carberrys agreed to pay them (1) the amount of the down-payment the Stroops would have to make on a new Chevrolet demonstrator, plus (2) the amount still owed the bank, plus (3) an amount at a later time, with no interest, which would bring the total amount to $1,820. The Stroops said their reason for not filing a lien was to save the Carberrys the trouble and expense involved. The Carberrys on the other hand, testified that the only price that was ever discussed was (1) the down-payment that the Stroops would have to make on a new Chevrolet demonstrator,

12

plus (2) the balance owing at the bank on the Packard, both sums totalling $918.98.

Where there is a conflict in the evidence on a question of fact which is tried by the district court without a jury, the court's findings will not be disturbed on appeal where there is substantial evidence to support them. Healy v. First Nat. Bank., 108 Mont. 180, 89 P.2d 555; Kerns v. F. W. Woolworth Co., 138 Mont. 249, 356 P.2d 127.

The plaintiffs have recognized the above rule. However, they contend that the testimony of the defendants concerning the amount agreed upon in payment of the Packard is so highly improbable, vague, contradictory and lacking in substance that it must be disregarded, and that the instant case is therefore governed by the rule laid down by this court in Casey v. Northern Pacific Ry. Co., 60 Mont. 56, 198 P. 141. In the Casey case, this court held that the supreme court could reverse a district court on a question of fact where the testimony supporting the verdict is highly improbable, incredible or inherently impossible in view of the physical facts.

The rule stated in the Casey case is not applicable to the instant case. The price at which an automobile may be sold may fluctuate from the so-called ''book value'' listed in the manuals which automobile salesmen use in their daily work. Of course much of the price depends upon the condition of the automobile and also upon the current position of the seller. Under certain circumstances the seller may find that he must make a sacrifice sale at a price much lower than the actual value of the automobile. In the instant case, there is testimony that the Packard was not in excellent shape at the time of the sale. There is also testimony that the Stroops could not afford to carry payments on two automobiles at the same time and that Mr. Stroop was required by his job to buy a new Chevrolet demonstrator. The fact that the Packard was offered for sale at the used car lot of Mr. Stroop's employer for the price of $2,195 or the fact that Mr. Stroop offered to sell the Pack-

ard to Mr. Wirtz for a total price of $1,800 or $1,850 are unimportant since the Packard was not sold on either occasion. This evidence also shows that Mr. Stroop was attempting to sell the automobile for a period of time and had been unable to do so at these prices. The testimony of Mr. Stroop that he was offered $1,300 cash, plus another automobile worth $400, is subject to some skepticism since the purported buyer was never identified nor called as a witness and this testimony was elicited as rebuttal evidence and not brought out during the plaintiffs' case in chief. Under these circumstances a trier of fact could find that the plaintiffs were making a sacrifice sale because they found it necessary to sell the Packard and had not been able to do so at higher prices.

We wish to point out that the plaintiffs' evidence is itself somewhat improbable. Here, we have an automobile salesman of some experience who claims that he agreed to sell his automobile to the Carberrys for a total amount of $1,820 and has received $918.98 in part-payment. However, he did not file a lien or take a note for the claimed $901.02 which is still due. The plaintiffs are attempting to justify their failure to file a lien on the Packard by claiming they wanted to help their friends by not putting them to any trouble or expense. The expense of filing a lien would have been $1 and any prudent person, especially an experienced automobile salesman, would likely file such a lien to protect an investment of $901.02. It should also be noted that there was a three-month period after the title was transferred before any mention was made of any amount further due.

We believe that the district court was confronted with a question of fact only, in the instant case. Both of the plaintiffs testified that the agreement was to sell the Packard at one price while both of the defendants testified that the agreement was to sell at another price. The most that can be said is that there was conflicting evidence concerning the agreed price that the defendants would pay for the Packard. The district judge

had the advantage of observing the witnesses during their testimony and was in a better position than this court to determine their veracity. Under these circumstances, the district court had substantial evidence in favor of its findings and such findings will not be disturbed by this court on appeal.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ANGSTMAN and JOHN C. HARRISON, concur.

MR. JUSTICE ADAIR specially concurring.

I concur in the result but not in all that is said in the foregoing opinion.